IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRAXYS NORTH AMERICA, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| FILA OILFIELD SERVICES, LLC; | § | CIVIL ACTION NO. H-16-0721 |
| FILA-MAR ENERGY SERVICES, LLC; | § | |
| NST TRANSLOAD OPERATING | § | |
| COMPANY, LLC (d/b/a NORTHSTAR | § | |
| MIDSTREAM); and NORTHSTAR | § | |
| MIDSTREAM, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are Defendants Fila Oilfield Services, LLC and Fila-Mar Energy Services, LLC's ("Fila") Motion to Exclude Testimony of Charles Mazur ("Fila's Motion to Exclude") (Docket Entry No. 30); Defendants Fila Oilfield Services, LLC and Fila-Mar Energy Services, LLC's Motion for Partial Judgment on the Pleadings ("Fila's Motion for Partial Judgment on the Pleadings") (Docket Entry No. 31); Defendant NST Transload Operating Company, LLC d/b/a NorthStar Midstream's ("NST") Motion for Summary Judgment ("NST's MSJ") (Docket Entry No. 32); Defendants Fila Oilfield Services, LLC and Fila-Mar Energy Services, LLC's Motion for Leave to Amend Answer ("Fila's Motion for Leave to Amend") (Docket Entry No. 33); Defendant NST Transload Operating Company, LLC d/b/a NorthStar Midstream's Motion for Leave to File an Amended Answer

("NST's Motion for Leave to Amend") (Docket Entry No. 34); Defendant NST Transload Operating Company, LLC d/b/a NorthStar Midstream's Motion for Summary Judgment on Damages ("NST's MSJ on Damages") (Docket Entry No. 38); and Defendants Fila Oilfield Services, LLC and Fila-Mar Energy Services, LLC's Motion for Summary Judgment ("Fila's MSJ") (Docket Entry No. 39).

For the reasons stated below, Fila's Motion to Exclude will be denied, Fila's Motion for Partial Judgment on the Pleadings will be granted, NST's MSJ will be denied, Fila's Motion for Leave to Amend will be granted, NST's Motion for Leave to Amend will be granted, NST's MSJ on Damages will be denied, and Fila's MSJ -- insofar as it is ripe for decision -- will be denied.

## I.  Factual and Procedural Background

In the spring of 2014 an associate trader with plaintiff Traxys North America, LLC ("Traxys"), Scott Musser, visited North Dakota in an attempt to locate indoor warehousing suitable for ceramic proppant.[1]  While there Musser saw an advertisement for storage at the NST transloading facility and contacted NST about the possibility of storing proppant.[2]  NST could not meet Traxys'

---

[1]Videotaped Deposition of Scott Musser taken March 31, 2017 (hereinafter "Musser Depo"), at 242:2-7, Exhibit 1 to Plaintiff's Response in Opposition to Fila's Motion for Summary Judgment ("Traxys' Response in Opposition," Docket Entry No. 54), Docket Entry No. 55, p. 6.

[2]Musser Depo at 241:10-242:1, Exhibit 1 to Traxys' Response in Opposition, Docket Entry No. 55, pp. 5-6.

storage needs because it did not have indoor facilities.[3] NST referred Musser to Fila, which was planning to construct indoor storage facilities at the NST terminal.[4] Fila had an agreement with NST, titled the Commodity Transloading Services Agreement, under which it could store goods at the NST terminal.[5] But per that agreement, Fila's right to access the storage facility was not "to substantially interfere with or diminish [NST's] complete control and responsibility for the operation of the [storage facility] and the performance of the [transloading services]."[6]

Traxys eventually entered into an agreement with Luoyang Aoxiang Ceramics Co., Ltd., to purchase 6,000 metric tons of 20/40 ISP ceramic proppant to be shipped from Qingdao, China.[7] On August 28, 2014, Traxys entered into an agreement with Fila for the delivery of the 6,000 metric tons of ceramic proppant in 4,000 bulk bags, each containing 1.5 metric tons of proppant.[8] Fila agreed

---

[3]See Declaration of Mark Hetherington at ¶ 5, Exhibit A to NST's MSJ, Docket Entry No. 32-1, p. 2.

[4]Id.

[5]Commodity Transloading Services Agreement, dated July 2, 2014, Exhibit 4 to Traxys' Response in Opposition, Docket Entry No. 55, pp. 21-36.

[6]Id. at 29 ¶ 13.

[7]Email with Traxys and Luoyang contract attached, Exhibit 5 to Traxys' Response in Opposition, Docket Entry No. 55, pp. 37-38.

[8]Agreement between Traxys and Fila, dated August 28, 2014 (hereinafter "Fila Agreement"), Exhibit 3 to Traxys' Response in Opposition, Docket Entry No. 55, pp. 19-20.

that it would be responsible for the loading, ocean transport, discharging, loading onto railcars, and rail freight from Qingdao, China to the Bakken Shale play in North Dakota, and the discharging of railcars to a warehouse.[9] The agreement between Traxys and Fila also included the following term: "Warehouse storage at NorthStar Terminal is $5.00 per 1.5 MT super-sack after 30 free days."[10]

The proppant was loaded at the Port of Qingdao on or about October 23, 2014.[11] The vessel carrying the proppant arrived in Everett, Washington, on or around November 12, 2014.[12] A Fila-ordered survey of the proppant completed upon arrival found that moisture levels in the proppant ranged from 9 to 11%.[13]

In mid-December of 2014 the proppant began to be transported by rail from the port and to NST's terminal in North Dakota.[14] When

---

[9]Id.

[10]Id.

[11]Email from Dom Pere to Scott Musser, dated October 24, 2014, Exhibit 5 to Traxys' Response in Opposition, Docket Entry No. 55, pp. 37-38.

[12]Email from Dom Pere to Scott Musser, dated November 6, 2014, Exhibit 8 to Traxys' Response in Opposition, Docket Entry No. 55, p. 69.

[13]Survey Report dated November 18, 2014, from Cullen Maritime Services, Inc., Exhibit 9 to Traxys' Response in Opposition, Docket Entry No. 55, pp. 70-87.

[14]Email from Lambert Arceneaux to Scott Musser, dated December 12, 2014, Exhibit 12 to Traxys' Response in Opposition, Docket Entry No. 55, p. 102; Survey Report conducted by VeriClaim Inc., dated November 4, 2015, Exhibit 13 to Traxys' Response in Opposition, Docket Entry No. 55, pp. 103-15.

Traxys visited the NST facility on May 7, 2015, to check on the condition of the bags, it found that only 1,090 of the 4,000 bags had been moved inside the warehouse.[15] A moisture probe analysis conducted by Scott Musser in May of 2015 revealed that some of the bags had moisture readings up to 29.9%.[16] Traxys withheld storage payments from February of 2015 through June of 2015.[17] Fila eventually sent an invoice reflecting a reduced rate of $3 per bag to cover the months of outdoor storage, which Traxys paid.[18] Fila's later invoices reverted to the rate of $5 per bag.[19] As of September of 2015, approximately 1,000 bags remained outside.[20] A number of the bags had been damaged during attempts to move them by forklift.[21] On September 30, 2015, Fila notified Traxys that Fila

[15]Email from Scott Musser to Fila, dated May 11, 2015, Exhibit 18 to Traxys' Response in Opposition, Docket Entry No. 55, pp. 122-24.

[16]Email from Scott Musser to Fila Accounting Support, dated May 11, 2015, Exhibit 20 to Traxys' Response in Opposition, Docket Entry No. 55, pp. 126-27.

[17]Email dated March 4, 2015, from Fila to Scott Musser, Exhibit 15 to Traxys' Response in Opposition, Docket Entry No. 55, pp. 118-19.

[18]Invoice #1521 dated May 28, 2015, Exhibit 16 to Traxys' Response in Opposition, Docket Entry No. 55, p. 120.

[19]Email from Scott Musser to Fila Accounting Support, dated May 11, 2015, Exhibit 20 to Traxys' Response in Opposition, Docket Entry No. 55, pp. 126-27.

[20]Email dated September 8, 2015, from Fila to Scott Musser, Exhibit 21 to Traxys' Response in Opposition, Docket Entry No. 55, pp. 128-31.

[21]Email from Scott Musser to Todd Frank, dated October 6, 2015, Exhibit 23 to Traxys' Response in Opposition, Docket Entry No. 55, pp. 133-34.

was defaulting on its storage agreement with NST that required Fila to move a specified quantity of material through the storage facility monthly.[22]  Traxys subsequently sold the proppant for salvage.  Traxys sold 828,000 pounds of proppant to RockPile Energy Services at $0.06/lb for a total of $46,368,[23] and Traxys sold 12,387,720 pounds of proppant to Kelly Supply at $0.009/lb for a total of $111,489.48.[24]

On March 18, 2016, Traxys sued NST and Fila asserting breach-of-contract and negligence claims in connection with damages to the ceramic proppant stored on NST's property.  Defendants have moved for summary judgment on several issues, moved to amend their original answers, and moved to exclude Traxys' expert testimony.

## II.  Choice of Law

As a preliminary matter, defendants argue that North Dakota law controls.  A federal court sitting in diversity applies the forum state's choice-of-law rules to determine which substantive law will apply.  See Erie Railroad Co. v. Tompkins, 58 S. Ct. 817

---

[22]Email from Scott Musser to Todd Frank, dated November 19, 2015, Exhibit 22 to Traxys' Response in Opposition, Docket Entry No. 55, p. 132; Email from Scott Musser to Todd Frank, dated October 6, 2015, Exhibit 23 to Traxys' Response in Opposition, Docket Entry No. 55, pp. 133-34.

[23]Purchase order for RockPile Energy Services, LLC, dated December 29, 2015, Exhibit 29 to Traxys' Response in Opposition, Docket Entry No. 55, pp. 162-67.

[24]Purchase order for Kelly Supply LLC, dated December 14, 2015, Exhibit 30 to Traxys' Response in Opposition, Docket Entry No. 55, pp. 167-71.

(1938); <u>Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.</u>, 61 S. Ct. 1020 (1941). Texas courts resolve the issue of which state's law applies in a contract dispute by looking to the Restatement (Second) of Conflict of Laws (1971). <u>Maxus Exploration Co. v. Moran Brothers, Inc.</u>, 817 S.W.2d 50, 53 (Tex. 1991). If the contract does not stipulate the law to be applied in the event of a dispute, as is the case here, the general rule of section 188 of the Restatement controls. <u>See</u> <u>id.</u>; <u>see also</u> <u>DeSantis v. Wackenhut Corp.</u>, 793 S.W.2d 670, 677-78 (Tex. 1990), <u>cert. denied</u>, 111 S. Ct. 755 (1991). Under that rule "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." Restatement (Second) of Conflicts of Laws § 188(1) (1971). State contacts are evaluated not by their number, but by their quality. <u>Minnesota Mining and Manufacturing Co. v. Nishika Ltd.</u>, 955 S.W.2d 853, 856 (Tex. 1996) (citations omitted). In applying this test, the court considers (1) "the place of contracting," (2) "the place of negotiation of the contract," (3) "the place of performance," (4) "the location of the subject matter of the contract," and (5) "the domicile, residence, nationality, place of incorporation and place of business of the parties." <u>Bailey v. Shell Western E&P, Inc.</u>, 609 F.3d 710, 723 (5th Cir. 2010).

The parties' contract does not stipulate which law is to be applied in the event of a dispute. Defendants argue that the balance of factors supports application of North Dakota law. Fila notes that the proppant at issue was to be delivered to and stored in North Dakota. The remaining factors do not clearly indicate a more significant relationship with another state. Traxys does not dispute the significance of the relationship with North Dakota but argues that no choice of law analysis is required because it has withdrawn its claims for punitive damages[25] and thereby removed the conflict Fila identified between the applicable law of Texas and that of North Dakota. But Fila identifies another conflict between North Dakota and Texas law in its Reply.[26] Moreover, the alleged torts and the resulting damage occurred in North Dakota. For clarity and consistency, the court will therefore apply North Dakota law to all state law issues.

## III. Fila Motions

### A.   Motion to Exclude

Fila asks the court to exclude the testimony of Traxys' expert witness, Charles Mazur. Fila argues that Mazur's references to the facts and data he relied upon do not satisfy the notice

---

[25]Plaintiff's Response in Opposition to Fila's Motion for Partial Judgment on the Pleadings, Docket Entry No. 42, p. 5.

[26]Defendants Fila Oilfield Services, LLC and Fila-Mar Energy Services, LLC's Reply in Support of Motion for Summary Judgment with Objections, Docket Entry No. 57, p. 5, n.1.

requirements of Federal Rule of Civil Procedure 26, that Mazur lacks the requisite background, that Mazur's testimony is based on sources not reasonably relied upon by experts in the relevant fields, and that Mazur offers impermissible legal opinions. Traxys argues that Mazur's experience valuing projects in the oil and gas industry qualifies him "to testify on the market conditions of ceramic proppant, as well as other related matters, including logistics."[27]

Unless an expert is clearly unqualified to render an opinion, the court's usual practice is to rule on such motions at trial because (1) counsel frequently limit the scope of experts' testimony at trial, (2) counsel often establish more extensive predicates for experts' testimony at trial, and (3) experts sometimes modify their opinions at trial. Having carefully considered the parties' arguments the court is not persuaded that Mazur should be excluded. Although there is no indication that Mazur is an expert on proppant from a materials standpoint, his experience as a valuation expert for oil and gas projects may qualify him to opine on relevant aspects of the proppant market. At any rate, the court is not persuaded that Mazur is clearly unqualified. Questions regarding the sources relied upon by an expert typically go to credibility rather than admissibility. For

---

[27]Plaintiff's Response in Opposition to Fila's Motion to Exclude Mazur, Docket Entry No. 43, p. 9.

the reasons stated above, the court will decide on the admissibility of specific portions of Mazur's testimony at trial. Accordingly, Fila's Motion to Exclude will be denied. Traxys should, however, supplement Mazur's report with the specific identities of sources upon which Mazur relies. Specifically, Traxys must identify the records and information on which Mazur relied, the identity of the source from Carbo Ceramics with whom Mazur or his organization discussed moisture testing of ceramic proppant, the industry sources on which Mazur relied for his pricing of distressed ceramic proppant, and the identifying information of the Carbo Ceramics report on the value of undamaged proppant. Traxys will have 14 days from the entry of this Memorandum Opinion and Order to provide that information to all defendants.

## B.   Motion for Partial Judgment on the Pleadings

Once a responsive pleading has been filed, a motion to dismiss for failure to state a claim is treated as a motion for judgment on the pleadings under Rule 12(c). Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam). "'A motion brought pursuant to FED. R. CIV. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'" In re Enron Corp. Securities, Derivative & "ERISA" Litigation, 439 F. Supp. 2d 692, 695

(S.D. Tex. 2006) (quoting <u>Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 312 (5th Cir. 2002) and <u>Herbert Abstract Co. v. Touchstone Properties, Ltd.</u>, 914 F.2d 74, 76 (5th Cir. 1990) (<u>per curiam</u>)). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." <u>Doe v. MySpace, Inc.</u>, 528 F.3d 413, 418 (5th Cir. 2008) (citing <u>Johnson v. Johnson</u>, 385 F.3d 503, 529 (5th Cir. 2004)). Accepting the plaintiff's factual allegations as true, the court considers whether the complaint states a plausible claim for relief. <u>See</u> <u>Young v. City of Houston</u>, 599 F. App'x 553, 554 (5th Cir. 2015).

Fila seeks judgment as a matter of law as to Traxys' tort claims.[28] Fila argues that a breach of contract, without more, cannot support a tort claim, such as negligence. Traxys responds by citing Texas cases involving parties who were not in a contractual relationship. Under North Dakota law "[c]onduct that constitutes a breach of contract does not subject the actor to an action in tort for negligence, unless the conduct also constitutes a breach of an independent duty that did not arise from the contract." <u>Dakota Grain Co., Inc. v. Ehrmantrout</u>, 502 N.W.2d 234, 236-37 (N.D. 1993). Accepting Traxys' factual allegations as true, Traxys has not identified any independent duty that did not arise

---

[28]The remaining arguments addressed in Fila's Motion for Partial Judgment on the Pleadings--choice of law and punitive damages--are addressed in Section II, *supra*.

from its contract with Fila. <u>See</u> <u>Olander Contracting Co. v. Gail</u> <u>Wachter Investments</u>, 643 N.W.2d 29, 39 (N.D. 2002). Fila's Motion for Partial Judgment on the Pleadings will therefore be granted, and Traxys' tort claims against Fila will be dismissed.

## C. Motion for Leave to Amend

Under Rule 16(b)(4) "[a]fter a scheduling order deadline has passed, a party must show good cause [in order] to obtain leave to amend the operative pleadings." <u>Meaux Surface Protection, Inc. v.</u> <u>Fogleman</u>, 607 F.3d 161, 167 (5th Cir. 2010). The court's discretion to grant such leave is "guided by the following factors: '(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" <u>Id.</u> (quoting <u>S&W</u> <u>Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA</u>, 315 F.3d 533, 536 (5th Cir. 2003)). Once the Rule 16(b)(4) standard has been met, the court applies the more liberal Rule 15(a) standard by which "leave to amend 'shall be freely given when justice so requires.'" <u>S&W Enterprises</u>, 315 F.3d at 535 (quoting FED. R. CIV. P. 15(a)). Leave may be denied under Rule 15(a) only for a "substantial reason." <u>In re Southmark Corp.</u>, 88 F.3d 311, 314-15 (5th Cir. 1996).

Fila asks the court to modify its September 23, 2016, deadline for amended pleadings to permit Fila to amend its answer to include

-12-

counterclaims for breach of contract and quantum meruit. Fila argues that there is good cause to amend the scheduling order because (1) the amendment is of critical importance, (2) Traxys will not suffer prejudice by the amendment, but (3) if Traxys is prejudiced, a continuance could cure the prejudice, and (4) litigation had not begun in earnest as of the deadline for motions to amend. Fila's argument regarding the status of the litigation at the time of the deadline for amendments constitutes an adequate excuse for Fila's failure to timely amend its answer. The court encourages parties to attempt early resolution, and the fact that no parties had begun conducting discovery as of the court's initial deadline for amendment suggests that all parties were working toward that end. The court concludes that the delayed start of discovery also minimizes the potential prejudice to Traxys. When Fila filed its motion, it had only taken one deposition and Traxys had taken none. The court also concludes that the amendment is important as it may constitute a dispositive defense and allow the suit to serve as a "final accounting" between the parties.[29] Moreover, a continuance would cure any prejudice Traxys may suffer from the amendment. Because the balance of Rule 16 factors weighs in favor of permitting amendment, and because the court is not aware of any substantial reason to deny

---

[29]Fila's Motion for Leave to Amend, Docket Entry No. 33, pp. 3-4.

the amendment, Fila's Motion for Leave to Amend will be granted. Fila will not, however, be permitted to re-depose any witness.

## D. Motion for Summary Judgment

Fila seeks summary judgment on Traxys' breach-of-contract claim, on damages, on Traxys' gross-negligence claim, and on its counterclaims for breach of contract and quantum meruit.[30] Because Traxys' tort claims will be dismissed for the reasons stated in Section III.B., Fila's motion is moot as to those claims. Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992) (citing Fed. R. Civ. P. 56(c)). "In order to avoid summary judgment, the nonmovant must identify specific facts within the record that demonstrate the existence of a genuine issue of material fact." CQ, Inc. v. TXU Mining Company, L.P., 565 F.3d 268, 273 (5th Cir. 2009).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v.

---

[30]Fila also objects to portions of Traxys' summary-judgment evidence. Because the court does not rely on the objectionable evidence, it does not decide those objections at this time.

-14-

<u>Sanderson Plumbing Products, Inc.</u>, 120 S. Ct. 2097, 2110 (2000). The court resolves factual controversies in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994). "Unsubstantiated assertions are not competent summary judgment evidence." <u>Hugh Symons Group, plc v. Motorola, Inc.</u>, 292 F.3d 466, 468 (5th Cir. 2002) (citing <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2553 (1986)). And "[m]ere conclusory allegations are not competent summary judgment evidence." <u>Id.</u> (citing <u>Eason v. Thaler</u>, 73 F.3d 1322, 1325 (5th Cir. 1996)).

### 1. Traxys' Breach-of-Contract Claim

Fila argues that Traxys' breach-of-contract claim should be dismissed on the basis that either (1) Traxys waived its contractual rights or (2) the parties modified the contract.[31] Fila argues that by initially withholding payment and then paying a reduced amount for outside storage of a portion of the proppant Traxys voluntarily and intentionally relinquished its contractual rights or, alternatively, agreed to modify the existing contract -- a "novation" under North Dakota law.

"Waiver is a voluntary and intentional relinquishment or abandonment of a known advantage, benefit, claim, privilege, or

---

[31]For summary purposes, Fila does not argue that it did not breach the original agreement.

right." <u>Hanson v. Cincinnati Life Insurance Co.</u>, 571 N.W.2d 363, 366 (N.D. 1997) (citations omitted). "A waiver may be established either by an express agreement, or by inference from acts or conduct." <u>Id.</u> at 367. The existence of waiver generally is a question of fact, but if circumstances of an alleged waiver are clearly established and reasonable persons can draw only one conclusion from those circumstances, the existence of waiver is a question of law. <u>Id.</u> "'It is elementary that an innocent party may waive a breach of a contract and continue performance on his part. If such performance is continued with no conditions attached, the innocent party has made an election and waived the breach.'" <u>Dangerfield v. Markel</u>, 252 N.W.2d 184, 191 (N.D. 1977) (quoting <u>Western Transmission Corp. v. Colorado Mainline, Inc.</u>, 376 F.2d 470, 472 (10th Cir. 1967)). The court is not persuaded that Traxys voluntarily and intentionally relinquished its contractual rights as a matter of law. Traxys did not continue performance under the original agreement. Instead, Traxys withheld payments. When Traxys eventually agreed to pay a lesser amount, it was on the condition that Fila have the remaining proppant moved indoors, a condition which Fila allegedly never fulfilled. There is therefore a genuine dispute as to whether Traxys' actions manifest an intention to relinquish its contractual rights after the initial alleged breach.

The court also is not persuaded that there was sufficient meeting of the minds to show a modification or novation as a matter

-16-

of law. A "novation" under North Dakota law is "the substitution of . . . a new obligation between the same parties with intent to extinguish the old obligation." N.D. CENT. CODE § 9-13-10(1). "To have a novation, the parties must intend to extinguish the old obligation, there must be mutual assent, and there must be sufficient consideration." Schmitt v. Berwick Township, 488 N.W.2d 398, 400 (N.D. 1992). Traxys argues that it never intended to extinguish Fila's original obligation to store the proppant indoors and that it was acting in good faith by paying the $3 per bag outside rate with the understanding that Fila would move the remaining bags indoors. Fila's reversion to the original rate upon being notified that the proppant had been moved indoors supports the position that the parties intended to return to the terms of the original agreement. But even assuming arguendo that the parties did modify the contract, Fila does not cite any authority supporting the position that by modifying the contract Traxys waived its right to recover damages caused by the previous breach.[32]

2. Damages

"The elements of a prima facie case for breach of contract are: (1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach." WFND, LLC v. Fargo

---

[32]At least one court has held to the contrary: "The modification of a contract after its breach does not waive damages for the past breach unless the terms of the modification expressly or by implication show such waiver." Peak v. International Harvester Company of America, 186 S.W. 574, 576 (1916).

Marc, LLC, 730 N.W.2d 841, 848 (N.D. 2007). "Under North Dakota law, uncertainty as to the amount of damages, as opposed to the fact of damages, will not prevent recovery." Triton Corp. v. Hardrives, Inc., 85 F.3d 343, 347 (8th Cir. 1996) (citing Bergquist-Walker Real Estate, Inc. v. William Clairmont, Inc., 333 N.W.2d 414, 420 (N.D. 1983)). Instead, "[a] party who proves a breach of a contractual duty, but who fails to prove damages resulting from the breach, is entitled to nominal damages only." Hummel v. Mid Dakota Clinic, P.C., 526 N.W.2d 704, 709 (N.D. 1995) (citing 11 Williston on Contracts § 1339A (3d ed. 1968); 5 Corbin on Contracts § 1001 (1964); Restatement (Second) of Contracts § 346 (1981)). Traxys has shown that an actual controversy exists as to (1) whether Fila breached its contract with Traxys and (2) the fact of damages, however minimal, to Traxys' proppant as a result of the alleged breach. If Traxys prevails on its breach-of-contract claim, it may at least be entitled to nominal damages. Summary judgment will therefore be denied as to damages for Fila's alleged breach of contract.

### 3. Counterclaims

Because the court is only now granting Fila's Motion for Leave to Amend, and because Traxys has not yet been given the opportunity to respond to Fila's summary judgment arguments in support of its counterclaims, the court will refrain from deciding them at this time. As explained below, the parties will be required to mediate.

Traxys will be given an opportunity to respond to Fila's MSJ on its counterclaims if and when the mediator declares an impasse.

## IV.  NST Motions

### A.  Motion for Summary Judgment

NST moves for summary judgment on both of Traxys' claims against it.  NST argues that Traxys' breach of bailment contract claim fails because Traxys had no contract, express or implied, with NST.  NST argues that Traxys' negligence claim fails because (1) NST owed no duty to Traxys, (2) the economic loss rule bars Traxys' tort claim, and (3) NST did not breach any duty it may have owed to Traxys.

It is undisputed that NST had no express contract with Traxys. Traxys argues that, by storing the proppant, NST entered into an implied bailment contract with Traxys.  Traxys argues that NST "assumed possession of [the proppant]" so as to create a contract of bailment as a matter of law.[33]  NST did not reply to this argument.  Whether NST's contract with Fila gave rise to a bailment or merely a landlord and tenant relationship is a question of fact. The North Dakota Supreme Court has adopted the following test to distinguish the two:

> the test is whether the person leaving the property has made such a delivery to the owner of the premises as to amount to a relinquishment, for a time, of his exclusive possession, control, and dominion over the property, so

---

[33]Plaintiff's Response in Opposition to NST's Motion for Summary Judgment, Docket Entry No. 44, p. 20.

> that the latter can exclude, within the limits of the
> agreement, the possession of all others. If he has, the
> general rule is that the transaction is a bailment. If
> there is no such delivery and relinquishment of exclusive
> possession, and control and dominion over the goods is
> dependent in no degree upon the co-operation of the owner
> of the premises, and access to the goods is in no wise
> subject to the latter's control, it is generally held
> that the owner of the goods is a tenant or lessee of the
> space upon the premises where they are left.

Great Plains Supply Co. v. Mobil Oil Co., 172 N.W.2d 241, 245 (N.D.

1969) (quoting 8 Am. Jur. 2d, Bailments § 20, p. 926). The court

elaborated that "to constitute a bailment, there must be such a

full transfer, actual or constructive, of the property to the

bailee as to exclude the possession of the owner and all other

persons and give the bailee the sole custody and control of the

goods." Id. (citations omitted). Record evidence shows that NST

had "'complete control and responsibility for the operation of the

[storage facility] and the performance of the [transloading

services].'"[34] Drawing all reasonable inferences in favor of the

non-movant, there is at least a genuine issue of material fact as

to the existence of an implied bailment.

Even if there were no contractual relationship between Traxys

and NST, Traxys may yet prevail on its tort claim against NST. NST

argues that it owed no extracontractual duty to Traxys. Traxys

argues that, as a sub-bailee, NST may be liable for damages. North

Dakota law supports Traxys' argument. In answer to the question of

whether a bailor may maintain an action against a stranger to the

---

[34]Fila's MSJ, Docket Entry No. 39, p. 11, n.26 and accompanying
text (citing Docket Entry No. 32-3 at ¶¶ 7.4, 13).

bailment for negligently damaging a bailed chattel, the North Dakota Supreme Court stated that such an action may "unquestionably" be maintained. Grossman Chevrolet Co. v. Enockson, 86 N.W.2d 644, 646-47 (N.D. 1957) (citations omitted). The court cited the "well-settled" rule that "where any permanent injury is done to a chattel, the bailor may maintain an action against a third person for injury to the reversionary interest and where the bailor may, at his option, terminate the bailee's possession, he may recover the entire amount of damages to the property." Id. (citing Royal Stein Inc. v. B. C. U. Holding Corp., 127 N.Y.S. 2d 886, 887 (1954)). Record evidence raises a genuine issue of material fact as to whether NST damaged the proppant when attempting to move it by forklift.

NST argues that the economic loss rule bars Traxys' tort claims. But the economic loss rule only applies if the proppant was the subject of an implied contract between NST and Traxys, an allegation that NST denies and that the court will submit to the finder of fact. Dismissal of Traxys' tort claim on the basis of the economic loss rule would therefore be premature.

NST argues that, even assuming it owed an independent duty to Traxys, Traxys is unable to show that NST breached that duty. The essence of NST's argument is that it performed its obligations under its contract with Fila and that, as a result, Traxys is "estopped from arguing that NST should have acted different from or contrary to the Fila/NST Agreement by failing to contract or

communicate directly with NST knowing full well that NST would be handling the Proppant."[35] NST argues that Traxys "impliedly waived any right to complain over how NST performed."[36] NST does not cite to specific facts or authority in support of its argument, and the court is not persuaded that NST's estoppel defense entitles it to dismissal of Traxys' claims as a matter of law.

## B. Motion for Leave to Amend

Because the reasons stated above in Section III.C. also apply to NST's Motion for Leave to Amend, NST's motion will be granted.

## C. MSJ on Damages

NST's arguments in support of its MSJ on Damages have been rendered moot or rejected as a result of the court's decisions on the issues discussed above. NST's motion will therefore be denied.

## V. Conclusions and Orders

For the reasons stated above, Defendants Fila Oilfield Services, LLC and Fila-Mar Energy Services, LLC's Motion to Exclude Testimony of Charles Mazur (Docket Entry No. 30) is **DENIED**; Defendants Fila Oilfield Services, LLC and Fila-Mar Energy Services, LLC's Motion for Partial Judgment on the Pleadings (Docket Entry No. 31) is **GRANTED**; Defendant NST Transload Operating Company, LLC d/b/a NorthStar Midstream's Motion for Summary

---

[35]NST's MSJ, Docket Entry No. 32, p. 18.

[36]Id.

Judgment (Docket Entry No. 32) is **DENIED**; Defendants Fila Oilfield Services, LLC and Fila-Mar Energy Services, LLC's Motion for Leave to Amend Answer (Docket Entry No. 33) is **GRANTED**; Defendant NST Transload Operating Company, LLC d/b/a NorthStar Midstream's Motion for Leave to File an Amended Answer (Docket Entry No. 34) is **GRANTED**; Defendant NST Transload Operating Company, LLC d/b/a NorthStar Midstream's Motion for Summary Judgment on Damages (Docket Entry No. 38) is **DENIED**; and Defendants Fila Oilfield Services, LLC and Fila-Mar Energy Services, LLC's Motion for Summary Judgment (Docket Entry No. 39) is **DENIED in part** as to Traxys' breach-of-contract claim and damages and is not yet ripe for decision as to Fila's counterclaims.

The court believes that this case is well-suited for mediation. If the parties are unable to settle the case in the next 30 days, they will advise the court and will provide the name and contact information of an agreed mediator. If the mediation is not successful, the court will enter an amended docket control order.

The court's Order (Docket Entry No. 50) is **VACATED** as to the dates for filing the joint pretrial order and for docket call.

**SIGNED** at Houston, Texas, on this 12th day of September, 2017.

SIM LAKE
UNITED STATES DISTRICT JUDGE